**Mark S. DeMarco**
Attorney At Law
52 Duane Street, 7ᵗʰ Floor
New York, New York 10007
718 239 7070
Fax 718-239-2141
MSDLaw@aol.com

March 27, 2023

Hon. Diane Gujarati
United States District Judge
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn,  NY 11201

**BY ECF & ELECTRONIC MAIL**

Re:   *United States v. Christopher Acevedo*
      **21 Cr. 162 (DG)**

Your Honor:

This letter is submitted in response to the Government's motions *in limine* dated March 17, 2023, seeking to: (1) admit "other acts" evidence as direct evidence or under Federal Rule of Evidence 404(b); (2) introduce unspecified presumptive hearsay statements under the guise of admissibility of co-conspirator statements made during and in furtherance of the conspiracy under Federal Rule of Evidence 801(d)(2)(E); (2) introduce hearsay statements of the decedent, David Hutchinson; (3) introduce graphic crime scene and autopsy photos; (4) to preclude cross-examination, and;  (5)for an anonymous jury. *See* Government Mot. *in Limine* ("Gov. MIL").

A.   **The Government Should Be Precluded from Introducing Evidence of Uncharged Acts as Direct Evidence or Pursuant to Federal Rules of Evidence 404(b)**

I.   *The Indictment's Charges*

The Indictment charges Mr. Acevedo with two crimes: murder of David Hutchinson in aid of racketeering (Count One) and causing Mr. Hutchinson's death through the use of a firearm (Count Two). *See* Indictment ¶¶ 7-9. These charges reference one discrete incident of violence: the August 26, 2019 murder of Mr. Hutchinson. No other incidents are mentioned in the Indictment's charges as to Mr. Acevedo.

II.   **The Other Acts Evidence**

While the charges cover just one incident, the government seeks leave to introduce numerous additional alleged violent incidents or attempts, as well as unrelated narcotics activity

Hon. Diane Gujarati
March 27, 2023

"access device fraud, firearms possession and other violent crimes directed at Snow Gang or otherwise related to their Wood City gang membership, including evidence of the defendant's prior attempt to slash murder victim David Hutchinson and shootings directed at Snow Gang" *See* Gov. Mot. at 9-30.

Specifically, the government seeks to introduce, as racketeering activity, the following additional evidence and alleged incidents:

- September 2016: Wood City members fired at Snow Gang associates from a car;

- December 2, 2016: David Hutchinson and another Snow Gang member shot at the Wood City members, hitting one Wood City member;

- December 2016: Wood City members fired shots at Hutchinson's house in response to an earlier shooting by Snow Gang;

- December 31, 2016: Wood City members shot at a Snow Gang member's BMW in the vicinity of Springfield and 140th Avenue in Queens;

- May 13, 2017: Multiple Wood City members assaulted Snow Gang members, including Hutchinson, in Miami Beach, Florida;

- December 3, 2018: At the Jamaica Colosseum Mall, the defendant attempted to slash Hutchinson;

- Spring 2019: Snow Gang member Dontaye Goines shot at a Wood City member in the vicinity of Suthpin Boulevard in Queens;

- Mid-July, 2019: The defendant fired shots at Snow Gang members in Snow Gang territory in Queens;

- July 17, 2019: The defendant and other Wood City members fired shots at Snow Gang members;

- August 26, 2019: A Wood City member engaged in a fight with Snow Gang member Goines in Queens;

- August 26, 2019: Following the fight  Snow Gang members, including Goines, stole the YTB chain from Wood City member Joseph, as described above, setting off the chain of events leading to the murder in this case, and;

- August 27, 2019: Following the murder in this case, a Wood City associate shot a family member resulting in the recovery of three firearms.

2

Hon. Diane Gujarati
March 27, 2023

Since this evidence is inadmissible under any theory, this Court must deny the Government's motion in its entirety.

### III.    The "Other Acts Evidence" is Inadmissible

### A.    Legal Standard

"'[W]here it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b).'" *United States v. Lopez*, No. 09-CR-525 (JFK), 2010 WL 3452380, at *2 (S.D.N.Y. Sept. 1, 2010) (quoting *United States v. Nektalov*, 325 F. Supp. 2d 367, 372 (S.D.N.Y. 2004)). Although Rule 404(b) permits introduction of other uncharged acts for nonpropensity purposes, "district courts ***should not presume*** that such evidence is relevant or admissible." *United States v. Curley*, 639 F.3d 50, 56 (2d Cir. 2011) (emphasis added). Rather, "district courts must exercise great care to ensure that juries are not permitted to conclude that because a defendant has committed a similar crime before, he or she therefore has a criminal propensity sufficient to justify conviction in the case at hand." *United States v. Colon*, 880 F.2d 650, 656 (2d Cir. 1989) (reversing conviction based on admission of uncharged acts evidence). "The Government bears the burden of demonstrating the admissibility of evidence under Rule 404(b)." *United States v. Nachamie*, 101 F. Supp. 2d 134, 137 (S.D.N.Y. 2000).

### B.    Introducing Evidence of the Uncharged Acts Risks Eclipsing the Evidence of the One Charged Incident, Unduly Prejudicing Mr. Acevedo

In any event, the sheer number of additional incidents that the government seeks to introduce as "other act evidence" – five times as many as are charged in the Indictment – should itself give the Court pause.    Indeed, prior to admitting material under Rule 404(b), the Court must ensure that "its probative value is substantially outweighed by its prejudicial effect." *United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012) (quotation marks and citations omitted). The government cannot satisfy that requirement here.

Realistically, the very number of additional uncharged incidents will necessarily eclipse the evidence presented at trial directly relevant to the one incident charged in the Indictment. Indeed, it appears that based on the Rule 16 material the government has already disclosed, numerous government witnesses' testimony will relate to the uncharged acts – many of these witnesses will testify *solely* regarding the uncharged conduct. Whatever their probative value, the sheer volume of this "other acts" evidence renders it inherently improperly prejudicial. *See, e.g., United States v. Prousalis*, No. 03-CR-1509 (DLC), 2004 WL 1203150, at *2-3 (S.D.N.Y. June 2, 2004) ("the similar act evidence raises a substantial risk if presented on the Government's case in chief of diverting the jury from the issues central to its determinations" where it included "describing six other" incidents).

3

Hon. Diane Gujarati
March 27, 2023

The proffered "other acts" incidents also extend the timeline of the violent allegations against Mr. Acevedo by more than three years. Whereas the incident referenced in the Indictment occurred in August 2019, the "other acts" evidence propounded by the government extends to September 2016 – more than three years prior to the murder charged here. The story that the government will seek to present to the jury that occurred more than three years prior to the charged murder is categorically different than the story the jury will hear if the government's evidence is limited to the charges.

The high risk of undue prejudice to Mr. Acevedo is obvious: that the jury will convict as a result of accumulated allegations – the vast majority uncharged – extending more than three years before the charged conduct – rather than actual proof that he is guilty of the charged offenses. *See Scott*, 677 F.3d at 84 ("It stretches credulity to think that a jury would assume that the defendant's lengthy and numerous [uncharged] contacts with the police were not, in some sense, related to his bad character and criminal propensity"). That risk is precisely the improper propensity that Rule 404(b) was designed to prevent. *United States v. Puco*, 453 F.2d 539, 542 (2d Cir. 1971); *accord Nachamie*, 101 F. Supp. 2d at 142 ("evidence is not admissible under Rule 404(b) to prove the character of a person in order to show action in conformity therewith, and introducing evidence that the defendant committed the same act in the past presents a strong temptation for the jury to do just that.") (quotation marks omitted).

The government glibly dismisses any prejudice concerns, arguing that "[b]ecause the proffered evidence does not involve conduct any more sensational or disturbing than the offenses charged, there is no risk of unfair prejudice with respect to that evidence." *Gov Mot at 30* (quotation marks and citations omitted). While the one charged act encompasses a very serious allegation of violence, that does not cure the prejudice inherent in presenting the jury with evidence of repeated violent and threatening uncharged acts. Several of the uncharged allegations involve frightening evidence of violence and firearms use, and the uncharged assaults of May 2017 and December 2018 will likely include gruesome evidence of the victims' injuries and their physical condition following the uncharged assaults. That additional violent and disturbing evidence of "brutality" is unduly prejudicial – even if the charges include evidence of violence as well. *United States v. Colombo*, 909 F.2d 711, 712-14 (2d Cir. 1990) (vacating conviction based on improper introduction of uncharged conduct under FRE 404(b), although the defendant was charged with violent RICO robbery allegedly in conjunction with the Colombo crime family evidence of uncharged rape during the course of the robbery was unduly prejudicial).

Finally, any argument that the "other acts" incidents bear some relevance to the charges, cannot justify their introduction at trial.  The relevance bar may be low, but it cannot justify the introduction of these separate acts that cumulatively will necessarily overwhelm the direct evidence of the two incidents charged. *United States v. Williams*, 585 F.3d 703, 708 (2d Cir. 2009) ("undue prejudice . . . can result when the 'minute peg of relevancy is entirely obscured by the dirty linen hung upon it'") (quoting *United States v. Bradwell*, 388 F.2d 619, 622 (2d Cir. 1968)).

4

Hon. Diane Gujarati
March 27, 2023

The Court should, accordingly, exclude the evidence of the uncharged acts as unduly prejudicial.

> **C.    Per the Second Circuit's Admonition, the Jury Will Likely
> Disregard a Limiting Instruction in the Face of Such Graphic
> Evidence of Uncharged Acts**

For other acts evidence to be admissible, the Court must be able to provide an effective limiting instruction to ensure that such evidence is considered only for a proper non-propensity purpose under Rule 404(b). *See Scott*, 677 F.3d at 79. An effective limiting instruction is, however, impossible here.

The Second Circuit has been unequivocal "that a jury will likely disregard an instruction that evidence is merely background in the face of 'shocking' evidence that the Government puts at the center of the trial." *United States v. Williams*, 585 F.3d 703, 710 (2d Cir. 2009). This risk is particularly acute here as the uncharged allegations are not just violent, but far more extensive than the charges themselves. Indeed, the other acts evidence here is orders of magnitude more extreme than the uncharged evidence introduced in *Williams*, which prompted the Second Circuit to vacate the conviction in that case.

In *Williams*, the defendant was charged as a felon in possession, after the defendant was arrested fleeing an apartment where gunshots were fired. In addition to this direct evidence, the district court admitted "other acts" evidence that the defendant had been present in an apartment where the following contraband was found: "four loaded firearms, including a revolver with an attached laser pointer, two bullet proof vests, at least 150 rounds of live ammunition of various types, a metal knuckle knife and machete, quantities of cocaine and marihuana, empty ziplock bags, several scales and over $4,000 in United States currency." *Id.* at 706. The Second Circuit vacated the conviction on appeal based on introduction of the evidence of the uncharged conduct, explaining that although the charged conduct involved firearms, still "the parade of guns and photographs that the Government put before [the jury], which was a major focus of the prosecutor's closing arguments," rendered any limiting instruction ineffective. *Id.* at 710.

That risk is even greater here than in *Williams*.  Because the voluminous "other acts" evidence that the government seeks to introduce is exceptionally graphic, threatening, and violent, realistically, the jury will be unable to follow a judicial instruction to cabin its consideration of the uncharged conduct to the limited purpose permissible under Rule 404(b). Instead, "there is an 'overwhelming probability' that the jury [will be] unable to consider dispassionately the evidence of such a violent crime simply as background for the surrounding events. By its very shocking nature, it becomes the centerpiece of the trial." *United States v. Colombo*, 909 F.2d 711, 715 (2d Cir. 1990) (vacating RICO gang robbery conviction where evidence of uncharged violence was introduced); *accord United States v. Perrone*, 936 F.2d 1403, 1410 (2d Cir. 1991) (where cooperator's testimony regarding other acts evidence "forcefully implicated" the defendant, the Second Circuit found "it unlikely that the jury was able to comply with the Judge's instruction" to consider the evidence for credibility of the cooperator

Hon. Diane Gujarati
March 27, 2023

"and not as substantive evidence of [the defendant's] guilt"). The Court should exclude the
evidence of the proferred uncharged acts on this basis as well.

      **D.**    **The Uncharged Evidence is not Admissible for a Proper Non-Propensity
Purpose**

          **1.**    **The Other Bad Acts Evidence Does Not Constitute Direct
Substantive Proof of the Charged Crimes Nor Does it Establish
<u>the Defendant's Membership in an Enterprise</u>**

      The government maintains that all of the evidence described in its motion constitutes
direct substantive proof of the existence of an Enterprise which engaged in racketeering activity.
That is not so.

      Initially, with respect to the aforementioned criminal conduct, the government has failed
to make the requisite showing that these acts were related to Mr. Acevedo's participation in the
crimes alleged in this indictment.  "The fact that the defendant may have committed similar . . .
acts in close temporal proximity to the charged crimes" is not direct evidence of charged conduct
where it "furnishes an element of context, but it is certainly not crucial information without
which the jury will be confused." *United States v. Townsend*, No. 06 Cr. 34, 2007 U.S. Dist.
LEXIS 32639, 2007 WL 1288597, at *2 (S.D.N.Y. May 1, 2007), *aff'd sub nom. United States v.
Mercado*, 573 F.3d 138 (2d Cir. 2009) (internal quotation omitted).  This criminal activity is not
"inextricably intertwined" with the charged conduct such that it provides direct evidence of the
relationship of the coconspirators or is necessary to complete the story of the charged crimes.

      "In deciding whether uncharged conduct is 'inextricably intertwined' with charged
conduct – and thus admissible as direct evidence – courts have considered whether '[the] details
of the uncharged transaction are necessary to understand the charged transaction.'" *United States
v. Martoma*, No. 12-CR-973(PGG), 2014 WL 31191, at *3 (S.D.N.Y. Jan. 6, 2014) (quoting
*United States v. Stein*, 521 F. Supp.2d 266, 271 (S.D.N.Y. 2007)). Crucially, "[c]ourts have not
found charged and uncharged conduct inextricably intertwined where the charged crimes are
straightforward and may be fully understood without reference to the uncharged conduct."
*Martoma*, 2014 WL 31191, at *3 (quotation marks, citations and modifications omitted).

      The uncharged acts the government seeks to introduce are "separate, discrete offense[s]"
that have little probative value to elements of the charged offenses. *United States v. Mahaffy*, 477
F.Supp.2d 560, 566 (E.D.N.Y.2007) (an uncharged act is not "inextricably intertwined" with the
charged crimes if it is a "separate, discrete offense that may be conceptually segregated from the
charged offenses"). The Second Circuit has indicated that the government may seek admission of
other act evidence to furnish an explanation of the understanding or intent with which the
charged acts were performed. *United States v. Skronowski*, 968 F.2d 242 (2d Cir. 1992).
However, before any such evidence can be introduced at trial, there must be a definitive
correlation between the other act evidence and the charges for which the defendant is on trial:

Hon. Diane Gujarati
March 27, 2023

> Evidence of another act should not be admitted to show knowledge
> unless the other act is sufficiently similar to the conduct at issue to
> permit the jury reasonably to draw from that act the knowledge
> inference advocated by the proponent of the evidence. Similarity,
> being a matter of relevancy, is judged by the degree to which the
> proper act approaches near identity with the elements of the
> offense charged. There is no necessity for synonymity but there
> must be substantial relevancy.

*United States v. Afjehei*, 869 F.2d 670, 674 (2d Cir. 1989); *United States v. Gordon*, 987 F.2d 902, 908-09 (2d Cir. 1993).

The government argues that the proffer uncharged acts are admissible as they complete the story of, and provides essential background for the August 2019 murder and that the uncharged firearm evidence is probative of the defendant's possession, use of, and ready access to firearms.  Not so.  There is absolutely no nexus between the above-referenced firearms and the firearm used to kill Mr. Hutchinson, and the evidence surrounding the charged incident itself is more than sufficient to provide the jury with evidence of the nature of the relationships and the alleged planning of the August 2019 incident.

The government contends that the August 26, 2019 homicide was simply in retaliation for the robbery of a gold chain from a Wood City gang member by  members of the Snow Gang earlier that day.  Indeed, the simplicity of motive and the sufficiency of government's evidence is more than enough to provide the jury with evidence of the nature of the relationships, the motive and the alleged planning, vitiating any legitimate need for the uncharged evidence.

The clarity with which the Indictment, and the government's motions detail the allegations against Mr. Acevedo regarding the uncharged incidents similarly refutes any claim that it is "inextricably intertwined" with the charged crimes. *See United States v. Hatfield*, 685 F. Supp. 2d 320, 323 (E.D.N.Y. 2010) ("the Indictment itself refutes the Government's 'inextricably intertwined' claims, as it tells a compelling complete and detailed story without mentioning the Defendants' alleged fraudulent statements to NASDAQ."). For this reason, courts have excluded other act evidence, as the Court should here. *See id.* at 323-25 (excluding uncharged "insider trading evidence as direct evidence" as it "involved 'separate, discrete incidents of alleged fraud or deceit,' not conduct that was 'inextricably intertwined' with the Indictment's charges or necessary to complete the Indictment's story."); *Newton*, No. 01-CR-635 (CSH), 2002 WL 230964, at *3 (excluding uncharged "similar fraudulent acts" in fraudulent visa case, as "while the activity was similar, these were separate visa referrals").

Finally, while the proffered uncharged criminal behavior involves conduct that may be generally similar to the conduct underlying the offenses charged in the indictment, the similarity is not so marked as to warrant admitting it as direct proof of the charged offenses.  Although the Government contends that this criminal activity has some probative value in explaining the

Hon. Diane Gujarati
March 27, 2023

existence of the enterprise, the probative value of the prior bad acts is undercut by the availability of other, less prejudicial evidence that makes the same points. *See Old Chief v. United States*, 519 U.S. 172, 182-83 (1997)("If an alternative were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by unfairly prejudicial risk.").

Because the government has not demonstrated a proper purpose for admission of the uncharged "other acts," the uncharged acts pose severe risk of undue prejudice, and the nature and volume of the uncharged conduct raises a likelihood that the jury will disregard any limiting instruction, the Court should exclude the "other acts" evidence in entirety.

**E.**     **Evidence of Gang Affiliation**,

While evidence of gang affiliation and membership is certainly relevant and probative, the social media posts, YouTube videos, rap song and rap lyrics all presumably containing countless slang expressions, trash talk, shorthand references, and puffery will likely appear inappropriate, if not indicative of illegal conduct, to jurors unfamiliar with the lingo used by Mr. Acevedo and his friends.  With the exception of identifying several YouTube videos, the government not yet identified or provided transcripts to any of the additional evidence that falls within this category.

**1.**     **The Rap Videos are Irrelevant**

With respect to the proffered Rap Videos, they should be deemed inadmissible since they are irrelevant; any possible probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, and needlessly presenting cumulative evidence; are impermissible character evidence, and; violative of defendant's right to free speech under the First Amendment of the U.S. Constitution.

The Rap Videos are irrelevant evidence for four reasons. First, rap videos, in general, are a fictionalized form of art and therefore not representative of the truth. Second, the Rap Videos are unrelated to the incident charged in the indictment. Third, Defendant does not "rap" or provide any commentary in the Rap Videos. Fourth, to the extent that Defendant is shown in the Rap Videos, insufficient evidence exists to conclude that he has adopted their content or messaging.

Rap videos are a fictionalized form of art and therefore not representative of the truth. Rap artists are well known for exaggerating events for creative effect. *See* Dre'Kevius O. Huff, *Rap on Trial: The Case for Nonliteral Interpretation of Rap Lyrics*, 5 Savannah L. Rev. 335, 337 (2018); *United States v. Bey*, No. 16 - 290, 2017 WL 1547006 (E.D. Pa. 2017) (Rap lyrics are not necessarily autobiographical statements; rather, rap music is a well-recognized musical genre that often utilizes exaggeration, metaphor, and braggadocio for the purpose of artistic

Hon. Diane Gujarati
March 27, 2023

expression. Because rap lyrics may falsely or inaccurately depict real-life events, they should not necessarily be understood as autobiographical statements).

Further, lyrics contained in the Rap Videos are hyperbolic and impossible to be true. For instance, in "YTB-Cartel Talk," the rapper claims he "caught a tan cuz my block is burning hot." Although New York City blocks can get hot in the summer, they certainly don't burn and cause people to get suntans. Such hyperbole underscores how rap music is a creative endeavor that is often untethered to reality. Consequently, since rap is a fictionalized form of art, the content contained in the Rap Videos does not have a tendency to make a fact more or less probable. As such, the Rap Videos are irrelevant. *See* Fed. R. Evid. 401.

Moreover, the Rap Videos are unrelated to the incident charged in the indictment. The videos that are available online – which show their publication dates – were published either months or years before or after the charged incident that occurred on August 26, 2019. As such, contrary to the Government's proffer that the video establishes Defendant's membership in the Wood City enterprise through his hand gestures, outfits, and association with others, etc., the Rap Videos are too temporally remote from the incident to establish that the Defendant was a member of the charged enterprise when the incident allegedly occurred. Further, the Rap Videos do not address the charged incident whatsoever. None of the videos discuss the purported chain-snatching leading up to the shooting, the shooting itself, or the aftermath of the shooting. Consequently, the Rap Videos are not relevant. *See* Fed. R. Evid. 401.

It must be noted that Mr. Acevedo does not rap – or provide any commentary – in any of the Rap Videos. The videos identified by the Government include rapping by Shawny Binladen, WASII, Big Yaya, and Super Gates. Mr. Acevedo does not rap or otherwise provide commentary in any of the Rap Videos. Since all rapping and commentary in the Rap Videos is provided by people other than the defendant, the Rap Videos are irrelevant because the commentary of rappers not charged does not tend to make a fact of consequence in determining the action more or less probable. Also, if the commentary of the rappers is to be credited for the truth of the matter asserted, then, since they are not the Defendant, such commentary falls squarely within the rule against hearsay and should be excluded. *See* Fed. R. Evid. 801; Fed. R. Evid. 802.

To the extent that Defendant is shown in the Rap Videos, insufficient evidence exists to conclude that he adopted the content or messaging of the Rap Videos. Although Defendant may be seen in the background of some of the videos, the Government has not proffered evidence to support a conclusion that he knew of – and supported – any message in the Rap Videos. In fact, the Rap Videos are of such a high production quality that Defendant would not necessarily know the lyrics or video footage that would be contained in the final videos. For instance, the videos typically contain footage from different locations, and a person who appeared in one scene may not have known what would be said or displayed in a separate scene. Furthermore, each video provides credits that indicate who was involved in the production or editing of the videos. These entities include Qasquit, Cash Cobain, Useless Films, Haitian Picasso, and JSitez. Crucially, none of these entities are the Defendant. Since Defendant played an insignificant role in the

Hon. Diane Gujarati
March 27, 2023

videos and was not involved with the production or editing process, no evidence exists to support a conclusion that he knew of, or adopted, any of the content or messaging contained in the videos.

Since the Rap Videos are a fictionalized form of art, are unrelated to the incidents charged in the indictment, do not contain Defendant's commentary, and were not produced, edited, or adopted by Defendant, they do not tend to make a fact of consequence more or less probable. Consequently, the Rap Videos are irrelevant and should not be admitted into evidence. *See* Fed. R. Evid. 401; Fed. R. Evid. 402.

## 2. <u>The Rap Videos are Unduly Prejudicial</u>

Nevertheless, jurors may infer from these videos that Mr. Acevedo is violent by nature, and therefore that it is more probable that he participated in the killing of David Hutchinson. Such improper inferences are precisely what Rule 403 is intended to guard against. *See Quattrone*, 441 F.3d at 186; *see also* Fed. R. Evid. 404(a) (evidence of a defendant's character or character trait not admissible "to prove that on a particular occasion the person acted in accordance with the character or trait").

Indeed, the proffered videos contain verbal references – sometime ambiguous and sometimes obvious – to shooting other people. They also contain hand gestures indicative of shooting a firearm. This content is undoubtedly prejudicial. *See United States v. Johnson*, 469 F.Supp.3d 193 (S.D.N.Y. 2019) (the court held that the probative value of excerpts of a rap video in which one defendant, cooperating witness, and another gang member appeared was substantially outweighed by the danger of unfair prejudice in this prosecution for racketeering and narcotics conspiracy; the court found that while the rap lyrics appeared to have little to no probative value, the references to violence and possible allusions to police misconduct, and the use of profanity, presented a risk of unfair prejudice to Defendant; accordingly, the rap video excerpts were excluded both as irrelevant and as more prejudicial than probative under Fed. R. Evid. 403); *United States v. Stephenson*, 550 F. Supp. 3d 1246 (M.D. Fla. 2021) (the risk that jury would render a conviction based on defendant's rap lyrics in publicly available videos purportedly depicting gang and drug-related activities and incorporating profane, offensive, and racially insensitive words and violent and sexual imagery was far greater than probative value of evidence in establishing defendant's knowledge, possession, and intent, and thus exclusion of videos was warranted); *United States v. Sneed*, 2016 WL 4191683 (M.D. Tenn. 2016) (rap video that appeared to depict the defendant and other individuals performing a rap song containing lyrics about drug sales and gang activity was irrelevant concerning the defendant's alleged participation in the charged conspiracy and his intent to distribute cocaine); *See* Stuart P. Fischoff, *Gangsta' Rap and a Murder in Bakersfield*, 294 J. APPLIED SOC. PSYCHOL. 795, 803 (1999) ("Study results clearly indicate that showing participants rap lyrics associated with a defendant exerted a significant prejudicial impact on the evaluation of a person, and particularly so when the person has been accused of murder.").

10

Hon. Diane Gujarati
March 27, 2023

Recognizing the risk for prejudice when courts allow rap lyrics into evidence, California recently passed legislation that restricts the admissibility of rap lyrics. *See* Cal. Evid. Code. 352.2 (2022). The New York State Senate has similarly passed the "Rap Music on Trial" bill. *See* 2021 NY S.B. 7527 (NS).

In addition to the danger of unfair prejudice, the videos may also mislead and confuse the jury to improperly believe that the videos are proof that Mr. Acevedo committed the charged crimes, since the videos reference shooting people.

Lastly, to the extent that the government contends argues that Mr. Acevedo's usage of Wood City hand gestures or clothing in the videos is relevant evidence of his membership in the enterprise, it must be noted that music videos are a fictionalized art form and thus not representative of the truth.  And Mr. Acevedo's gang membership can be established through his Instagram account and social media accounts of others. The danger of needlessly cumulative evidence quite readily outweighs the scant, if any, probative value of the videos.

**3.      Admitting the Rap Videos into Evidence Violates Defendant's
First Amendment Right to Free Speech**

Although the First Amendment does not prohibit the evidentiary use of speech to establish the elements of a crime, such evidence of speech cannot be introduced to show that Defendant was morally reprehensible due to his abstract beliefs. *U.S. Const. amend. I*; *United States v. Fell*, 531 F.3d 197 (2d Cir. 2008); *United States v. Kane*, 452 F3d 140 (2d Cir. 2006). As previously stated, the rap videos are not relevant evidence and their admission into evidence would amount to impermissible character evidence, which is exactly the what the First Amendment protects against – evidence showing that a defendant is reprehensible based on his abstract beliefs. Although "[a]rtistic work that refers to a specific act or motive that can be tied back to the alleged crime can be highly probative evidence," the rap videos do not refer to a specific act or motive that can be tied back to the specific crime. *Compare United States v. Carpenter*, 372 Supp.3d 74 (E.D.N.Y. 2019).

Since the videos do not refer to a specific act or motive and instead just generally glorify violence, drugs, and money, their admission into evidence would only show that Mr. Acevedo is morally reprehensible due to his abstract beliefs. Consequently, their admission into evidence would violate Defendant's right to free speech under the First Amendment of the U.S. Constitution. *See U.S. Const. amend. I.*

In sum, these recordings are not materially relevant to any disputed issue in the case, and particularly given the substantial risk of confusion of the issues and prejudice to Mr. Acevedo from their introduction, they should be excluded.

11

Hon. Diane Gujarati
March 27, 2023

### F.    Evidence of Mr. Acevedo's Prior Incarceration is Inadmissible

Equally unavailing and unduly prejudicial is the government's motion to admit evidence of Mr. Acevedo's prior incarceration.

In this Circuit, proof of incarceration in racketeering cases is introduced – not pursuant to Rule 404(b) – but rather as "evidence of the very racketeering crimes charged." *United States v. Coppola, 671 F.3d 220, 245* (2d Cir. 2012) (citations omitted). Such proof is often introduced as necessary background to the conspiracy, *see, e.g., United States v. Ashburn*, No. 11 Cr. 0303 (NGG), 2015 U.S. Dist. LEXIS 23786, 2015 WL 862118, at *1-2 (E.D.N.Y. Feb. 27, 2015); *United States v. Rodney Johnson*, No. S5 10 Cr. 431 (CM), 2013 U.S. Dist. LEXIS 164494, 2013 WL 6091601, at *3 (S.D.N.Y. Nov. 15, 2013) (deeming testimony from a cooperating witness about his incarceration with the defendant prior to the charged conspiracy "a classic instance of background evidence that is necessary to . . . begin the story that will be told at the trial"); or to explain how a relationship of trust developed amongst the defendants, *see, e.g., United States v. Faison*, 393 F. App'x 754, 759 (2d Cir. 2010) (approving testimony from defendant's co-conspirator that the two had shared a cell in prison); or where evidence of incarceration is reflected in communications between co-conspirators, see, e.g., *United States v. Guang Ju Lin*, 505 F. App'x 10, 12 (2d Cir. 2012) (upholding admission of "ten telephone calls between Lin and two associates identified by the Government as members of his criminal enterprise that were recorded while Lin was incarcerated and awaiting trial"; calls were "evidence of the continued operation of Lin's criminal enterprise"); *Ashburn*, 2015 U.S. Dist. LEXIS 23786, 2015 WL 862118, at *3 (admitting "evidence of emails and prison calls recorded while [defendant] and his co-defendants ha[d] been imprisoned pending trial in [the instant] case"; evidence "establish[ed] that the [d]efendants have been communicating with others, as well as with other members of the [gang]").

Before deciding to admit such evidence, "the court must engage in the balancing test prescribed by Rule 403." *Ashburn*, 2015 U.S. Dist. LEXIS 23786, 2015 WL 862118, at *2.

Here, despite the fact that Mr. Acevedo in charged with committing a murder in aid of a racketeering conspiracy, there is no reason for the Government to establish the defendant "needed to assert himself and commit the retaliatory Hutchinson murder himself, after other Wood City members took on leadership roles during the defendant's five-year period of incarceration." *See Gov MIL at 29*. As previously stated, evidence of the defendant's incarceration is not necessary for the jury to understand the charged conduct since the narrative of this case can easily be told without reference to the defendant's prior periods of imprisonment and the story of the criminal enterprise alleged is easily understood without reference to this evidence.

In addition, any reference to the defendants' prior periods of incarceration creates a unique threat of prejudice that affects due process and does not meet the test for admissibility under Rule 403. When the limited probative value of this evidence is measured against the

Hon. Diane Gujarati
March 27, 2023

prejudicial taint Mr. Acevedo will suffer – including the risk that the jury will speculate as to why he was previously imprisoned –  it is clear that the balancing test for admissibility under Rule 403 is not satisfied.

Accordingly, the Government's motion *in limine* seeking to admit evidence of Mr. Acevedo's prior incarceration should also be denied.

**IV.    The Communications and Statements By and With Uncharged Individuals are Inadmissible Hearsay Not Subject to Any Exceptions**

**A.    Statements By and With Uncharged Individuals are Inadmissible Hearsay Not Subject to Any Exceptions**

The government next moves *in limine* to: (1) introduce unspecified presumptive hearsay statements under the guise of admissibility of co-conspirator statements made during and in furtherance of the conspiracy under Federal Rule of Evidence 801(d)(2)(E) and *804(b)(3)*, and; (2) introduce testimonial and hearsay statements of the decedent, David Hutchinson. *See* Government Mot. *in Limine*, ECF Doc. 400 ("Gov. MIL").  In so doing, the government asks the Court to permit the introduction of expansive categories of presumptive hearsay based only on the government's belief that these out of court statements involve an alleged coconspirator.  The proffered evidence is not admissible under any theory.

Under Federal Rule of Evidence 801(d)(2)(E), "[t]o admit a statement under the coconspirator exception to the hearsay definition, a district court must find two factors by a preponderance of the evidence: first, that a conspiracy existed that ***included the defendant*** and the declarant; and second, that the statement was made ***during*** the course of and ***in furtherance*** of that conspiracy." *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999) (emphasis).

Although the FRE 801(d)(2)(E) exception requires compliance with exacting requirements for each alleged co-conspirator statement, the government seeks to introduce broad categories of communications. *See United States v. Coplan*, 703 F.3d 46, 82 (2d Cir. 2012) (the district court must "examine the hearsay statements sought to be admitted" in "making a preliminary factual determination" as to each statement's admissibility under Rule 801(d)(2)(E)) (quoting *Bourjaily v. United States*, 483 U.S. 171, 181 (1987)).

To begin, in many cases, the government has not even bothered to demonstrate that the declarant is a co-conspirator – omitting a fundamental premise of admission under Rule 801(d)(2)(E).  Many of the out of court statements raised by the government also suffer from other evidentiary defects. Some were not made during the alleged conspiracy's time frame, while others do not appear to have been made in furtherance of any conspiracy at all. Many of the statements raised by the government meet none of the Rule's requirements. But because admission under 801(d)(2)(E) requires the government to demonstrate that ***each and every*** hearsay statement it seeks to introduce meets the Rule's criteria by a preponderance

Hon. Diane Gujarati
March 27, 2023

of the evidence, the Court cannot admit anything on the government's present broadly-drawn request.

Even the statements that the government describes with some detail on their face fail the requirements for admissibility under FRE 801(d)(2)(E). As the Rule implicitly acknowledges, not all statements made by alleged co-conspirators are "in furtherance" of the conspiracy, as required under 801(d)(2)(E) – and several of the proffered categories of statements plainly are not. The government seeks to admit the following:

- Witness testimony about statements made by the defendant after the murder;

- Witness testimony concerning statements made by the defendant's then-girlfriend and others who aided the defendant after the murder;

- Witness testimony concerning statements by Wood City members who agreed to assist the defendant after the murder and to provide financial aid to him;

- Witness testimony concerning statements by the defendant after his release from prison in 2018 and prior to the murder about needing to take steps/actions to reassert his control over the enterprise;

- Witness testimony as to statements by uncharged enterprise members regarding their own intentions to murder, assault or retaliate against members of Snow Gang and admissions that they, in fact, did so;

- The testimony of witnesses and recorded jail calls of Wood City members apprising each other of future and past incidents of violence between Wood City and Snow Gang;

- Witness testimony and social media posts by Wood City members and associates about various crimes committed in furtherance of the enterprise, and;

- Social media posts, photograph captions and communications evidencing enterprise relationships and loyalty among its members.

The government argues that the statements listed above were all made in furtherance of the conspiracy and, accordingly, are admissible pursuant to Rule 801(d)(2)(E). In the alternative, the government contends that many of these statements are admissible pursuant to Rule 804(b)(3). This Court should deny this request.

While the government characterizes unspecified conversations, statements, social media posts and recorded prison phone calls as statements made in furtherance, without the specific

14

Hon. Diane Gujarati
March 27, 2023

statements, posts or calls identified, it remains impossible to decipher the true meaning of the messages and whether, by a preponderance of the evidence, they are in furtherance of the charged conspiracy.  The proffered communications alone are insufficient. *See Gigante*, 166 F.3d at 82.

For example, several of the statements took place in prison where the alleged conspiracy could not be effectuated, precluding a finding that they were made in furtherance of the conspiracy. *See, e.g., United States v. Torres*, 435 F. Supp. 3d 526, 531 (S.D.N.Y. 2020) ("To be in furtherance of the conspiracy, a statement must be more than a 'mere narrative' description by one coconspirator of the acts of another").  Moreover, for most of the statements, there is no proffer as to their timing, other than they were following the charged murder. The government has not demonstrated that the statements meet the Rule's temporal requirements that the statements were made during the conspiracy.

Finally, with respect to the series of statements allegedly made after the August, 26, 2019 murder, these statements are outside the conspiracy's temporal limitation and thus inadmissible as co-conspirator statements. The Second Circuit has clarified that "a statement is not made in the course of a conspiracy when it is made after the main objective of the conspiracy has been accomplished." *United States v. Arrington*, 867 F.2d 122, 130 (2d Cir. 1989).  Because, by the government's own indictment, the goal of the alleged conspiracy was the August, 26, 2019 murder,  statements following the termination of the alleged conspiracy are inadmissible. *See also United States v. Saneaux*, 365 F. Supp. 2d 493, 501 (S.D.N.Y. 2005) ("a statement made in furtherance of a conspiracy a fortiori is made during the course of that conspiracy").

### 1.  *Federal Rule of Evidence 804(b)(3)*

Nor can the government admit these statements with a general assertion that they are "statements against penal interest," or otherwise admissible for a non-hearsay purpose.

Under *Federal Rule of Evidence 804(b)(3)*, statements against penal interest are admissible where the declarant is unavailable. A statement is "against interest" if it is a statement that:

> (A) a reasonable person in the declarant's position would have made [the statement] only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to . . . expose the declarant to civil or criminal liability; and

> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

*Fed. R. Evid. 804(b)(3)*.

15

Hon. Diane Gujarati
March 27, 2023

Without more specificity it is impossible to decipher which of these exceptions the government contends applies to which statement (and indeed, what statements specifically the government seeks to admit). *United States v. Carneglia*, 256 F.R.D. 384, 392 (E.D.N.Y. 2009) ("Under the residual hearsay exception of Federal Rule of Evidence 807 (formerly found in Federal Rule of Evidence 803(24)), properly considered factors in an analysis of reliability of hearsay statements contained in reports of investigative interviews include: (1) the amount of time that elapsed between the event and the statements; (2) the degree of specificity of the statements; and (3) whether they were intended in good faith to help the officer or agent interviewing the witness solve a crime."). The government's motions *in limine* should thus be denied.

## B. Decedent's Statements to Friends and Family Are Inadmissible Hearsay

The government seeks to introduce statements made by the decedent David Hutchinson before his death. Although, the government provides only broad generalizations of these statements, and incomplete examples, it appears that the decedent's statements fall into the following category: statements to friends and family regarding his "opps" and his plans to attend a funeral.  The government seeks admission to prove the existence of a rivalry between gangs and to show his mother's state of mind under FRE 803(3) as evidencing concern for her son's well-being.  The government's arguments are meritless.

As an initial matter, because these statements are apparently relevant to the government's theory of motive, only Christopher Acevedo's state of mind is probative – proof of the decedent's or his mother's state of mind simply have no bearing on the outcome of the trial and thus cannot serve as a proper non-hearsay purpose.

Further, these statements are also plainly being offered for their truth: the government intends to prove that a rivalry existed as evidence of motive. They are accordingly inadmissible hearsay. *See, e.g., United States v. Reid*, No. 09-CR63 EBB, 2010 WL 4956116, at *1 (D. Conn. Dec. 1, 2010) ("The mere identification of a relevant nonhearsay use of such evidence, however, is insufficient to justify its admission if the jury is likely to consider the statement for the truth of what was stated with significant resultant prejudice.") (quotation marks and citations omitted).

The Court should deny the government's motion as to these out of court statements.
.

## V. 911 Calls

While defendant concedes that the proffered 911 calls are admissible as excited utterances or as present sense impressions, the admission of multiple calls would be cumulative, unduly prejudicial, and of little probative value and should, therefore, be excluded under Federal Rule of Evidence 403.

16

Hon. Diane Gujarati
March 27, 2023

**VI.   The Government Should Be Precluded from Offering Gruesome Videos, Photographs and Medical Examiner Testimony Concerning the Murder Victim in this Case, since the Cause and Manner of Death Are Not in Dispute**

The Government has moved to admit body camera footage, graphic crime scene photographs and gruesome "post-mortem images (photographs and video) showing a dying and deceased David Hutchinson."[1]

This evidence is not relevant to any disputed issue in this case since Mr. Acevedo does not contest the cause and manner of Mr. Hutchinson's death. Indeed, Mr. Acevedo is willing to stipulate to these facts. Thus, any probative value of the photographic and testimonial evidence is outweighed by its disturbing and gruesome nature. The evidence would serve only to inflame and prejudice the jury against Mr. Acevedo .

Unfairly prejudicial evidence "appeals to the jury's sympathies, arouses its sense of horror, [and] provokes its instinct to punish." 1 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 403[03], at 403–15 (1978). "Photographs, in particular, can be unfairly prejudicial if they are 'sufficiently shocking or repulsive' enough to necessarily elicit an emotional response from the jury." *United States v. Carman*, 02 CR 464-1, 2004 WL 1497800, at *1 (N.D. Ill. June 29, 2004) (quotation omitted). Courts in this district consider "the availability of other means of proof" when evaluating prejudice. *See United States v. Salim*, 189 F. Supp. 2d 93, 98 (S.D.N.Y. 2002) (quoting Fed. R. Evid. 403, Adv. Comm. Notes).  Where photographs depicting a bloody crime victim are challenged under Rule 403, "the analysis hinges upon whether the photograph is relevant to the resolution of some disputed point in a trial or otherwise aids a jury in a factual determination." *Id.* (citing *United States v. Velazquez*, 246 F.3d 204, 210-11 (2d Cir. 2001)).

Here, the body camera footage depicting Mr. Hutchinson's bloody body are gruesome the high resolution autopsy photographs of Mr. Hutchinson's gaping gunshot wound and dissected corpse are similarly disturbing and entirely unnecessary.  Such evidence is highly likely "arouse[]" a "sense of horror" in the jury and to "provoke[ ] its instinct to punish." Weinstein & Berger, *supra*, at 403-15; *see also Ferrier v. Duckworth*, 902 F.2d 545, 548-49 (7th Cir. 1990) (describing the admission of photographs of a "blood splattered floor" and more "lurid and disgusting" photographs of the corpse and the gun wound as "inexcusable" when the manner of death was not disputed).

Moreover, because the probative value of these photographs and forensic pathologist's testimony is minimal, this evidence is wholly unnecessary, unduly prejudicial, and should be excluded.

As discussed, Mr. Acevedo does not dispute the cause and manner of Mr. Hutchinson's death, and the Government has an abundance of alternative evidence in the record – such as

---

[1] Defendant does not object to the admission of  the autopsy report as a business record.

Hon. Diane Gujarati
March 27, 2023

ballistics reports, testimonial evidence, diagrams, and, most importantly, a *video of the shooting* – with which it can show that Mr. Hutchinson suffered fatal gunshot wounds. Security video footage provides indisputable evidence to show the exact date, time, and location of the shooting that killed Mr. Hutchinson and witnesses from the NYPD can testify (with the aid of diagrams, if necessary) as to how Mr. Hutchinson's body was discovered and situated at the crime scene. Police reports, ballistics evidence, and  the medical examiner's autopsy report can confirm the nature of the weapon used and manner in which Mr. Hutchinson died.

The gruesome footage and photographs of Mr. Hutchinson's body at the crime scene and during the subsequent autopsy are therefore merely cumulative, unduly prejudicial, and do not aid the jury in "the resolution of some disputed point in a trial." *See Salim*, 189 F. Supp. 2d at 98, 99 (excluding close-up photograph of a stabbing victim's injured face as "more prejudicial than probative" given "the disturbing nature of the close-up photograph" and the prosecution's failure to justify its probative value). *See also United States v. Eyster*, 948 F.2d 1196, 1212 (11th Cir. 1991) (criticizing the admission of a gruesome photograph of a dead body where "the manner of death of the body was not an issue for the jury to resolve"); *Gomez v. Ahitow*, 29 F.3d 1128, 1139-40 (7th Cir. 1994) (finding admission of "gruesome" photographs of victim's body was improper where neither the fact or the cause of death were at issue and stating "the only conceivable reason for placing them in evidence was to inflame the jury against [the defendant]") (quotation omitted); *cf. United States v. Salameh*, 152 F.3d 88, 122-23 (2d Cir. 1998) (affirming admission of "disturbing" photographs depicting victims killed in World Trade Center bombing because the defendants "*vigorously contested*" the Government's theory of the nature and location of the explosion) (emphasis added).

Finally, in addition to the reasons set forth above, the officers' body camera videos should be excluded since they show events that transpired after the charged shooting and are, therefore, irrelevant and unduly prejudicial.

Accordingly, the Court should exclude this graphic evidence of Mr. Hutchinson's death on the basis that it is not probative of any issue in dispute in this case, and that any probative value of the evidence is substantially outweighed by the risk of unfair prejudice to Mr. Hutchinson.

## VII.    This Court Should Not Limit or Preclude Cross-Examination of the Government's Witnesses[2]

Next, the government seeks an order from this Court precluding defendant from "introducing evidence or eliciting testimony" about two homicides that occurred after the

---

[2] With respect to Mr. Acevedo, counsels are aware that punishment in all respects is left to the sentencing judge, it is not a matter to be considered by the jury, and it has evidentiary value.

Hon. Diane Gujarati
March 27, 2023

charged murder here.  From the limited information provided by the government, it is impossible
to determine who participated in the murders or whether these murders were committed by a
government witness, by a witness who was working as a paid confidential informant for the
police, whether these crimes violated any agreements with the government or the NYPD, or
whether a witness's cooperator or informant status influenced the outcome of these cases.

However, in the event that a government witness was involved in these murders, this
Court should permit cross-examination on these murders since these events are certainly
probative of a witness's credibility since they demonstrate a pattern of gang-related conduct that
bears directly on a witness's credibility. This is especially case where a witness is testifying
pursuant to a cooperation agreement with the government.   In the case of a cooperating witness,
cross-examination on whether his status as a cooperator influenced the disposition of these cases
or whether a benefit is expected in exchange for cooperating is certainly appropriate.

The Confrontation Clause of the Sixth Amendment provides that in criminal cases the
accused has the right to "be confronted with the witnesses against him." *U.S. Const. amend. VI.*
The ultimate goal of the Confrontation Clause is to ensure reliability of evidence, but it is a
procedural rather than a substantive guarantee. *Crawford v. Washington*, 541 U.S. 36, 61 (2004).
It commands, not that evidence be reliable, but that reliability be assessed in a particular manner:
by testing in the crucible of cross-examination. *Id*.

Cross-examination is the principal means by which the believability of a witness and the
truth of his testimony are tested. Subject always to the broad discretion of a trial judge to
preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted
to delve into the witness' story to test the witness' perceptions and memory, but the
cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness. One way of
discrediting the witness is to introduce evidence of a prior criminal conviction of that witness.
By so doing the cross-examiner intends to afford the jury a basis to infer that the witness'
character is such that he would be less likely than the average trustworthy citizen to be truthful in
his testimony.  The introduction of evidence of a prior crime is thus a general attack on the
credibility of the witness.  It is not necessary that the cross-examination would have been certain
to affect the jury's assessment of the witness' reliability or credibility; rather, "it is sufficient that
a jury 'might reasonably' have questioned the witness's reliability or credibility in light of the
cross-examination." *Fowler v. Sacramento County Sheriff's Dep't,* 421 F.3d 1027, 2005 U.S.
App. LEXIS 18840 (*citing Del. v. Van Arsdall,* 475 U.S. 673, 680 (1986), *Davis v. Alaska,* 415
U.S. 308, 319 (1974), and *Olden v. Kentucky,* 488 U.S. 227, 232 (1988)).

The right to cross-examine is not limitless. *Fowler*, 421 F.3d at 1036. Trial judges "retain
wide latitude" to "impose reasonable limits on such cross-examination based on concerns about,
among other things, harassment, prejudice, confusion of the issues, the witness' safety, or
interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679. "Rather
significantly, however, these restrictions must be 'reasonable,' and 'may not be arbitrary or

Hon. Diane Gujarati
March 27, 2023

disproportionate to the purposes they are designed to serve.'" *Fowler*, 421 F.3d at 1037 (*quoting Van Arsdall*, 475 U.S. at 679).

*Federal Rule of Evidence 608(b)* permits inquiry into "specific instances of the conduct of a witness" where that conduct is "probative of truthfulness or untruthfulness" and where the questioning concerns "the witness' character for truthfulness or untruthfulness." *Fed. R. Evid. 608(b)*; see also *United States v. Bagaric*, 706 F.2d 42, 65 (2d Cir. 1983); *United States v. Nelson*, 365 F. Supp. 2d 381, 386-87 (S.D.N.Y. 2005). In accordance with this rule, courts in this Circuit have regularly permitted cross-examination regarding prior conduct that bears on a witness's character for truthfulness. See, e.g., *United States v. Schatzle*, 901 F.2d 252, 255-56 (2d Cir.1990) (permitting questions regarding omission of prior arrest from bar application).

A witness's gang membership, numerous arrests, convictions and bad acts in a relatively brief period of time is relevant to this witness's capacity to live a law-abiding life. Evidence which demonstrates a relevant pattern of conduct by a witness, or his intent or absence of mistake based on similar past conduct, is clearly admissible and proper grounds for cross-examination. See, e.g., *Ismail v. Cohen*, 899 F.2d 183, 188-89 (2d Cir. 1990) (allowing cross-examination regarding police officer's prior assault and wrongful arrest).

Furthermore, cross-examination on person's acts of violence will permit the jury to use this criminal conduct to evaluate this witness's testimony. The jury may use this information to find her to be less credible (or not credible at all), based on this conduct.

Any concerns about issue confusion or undue prejudice is not sufficient to completely exclude this cross-examination, especially when the jury can be instructed about the proper use of the evidence. Indeed, if cross-examination about a witness's involvement in two murders is thought as likely to be used for an improper purpose, that improper use could be avoided with pointed jury instructions especially where, as here, a jury might reasonably question the witness's credibility upon hearing it.

Alternatively, in the event that these murders were committed by a government witness, this Court should require the government (and permit the defendant) to investigate these matters further so that there is a sufficient factual record to support any legal findings regarding the relevance and admissibility of this evidence – there is no sufficient factual record now. Cf. *United States v. Kiszewski*, 877 F.2d 210, 215-16 (2d Cir. 1989). With the exception of representing that two gang members were killed hours after the charged homicide here, the government has yet to disclose anything else regarding these witness and presupposes that the events that it seeks to preclude have no potential bearing on a witness's credibility. Since neither the Court nor the defendant should ever rely exclusively on the (presumably self-serving) account of any witness as to his own credibility and reliability, there is no reason to do so here.

Hon. Diane Gujarati
March 27, 2023

## VIII.   An Anonymous Jury Is Neither Necessary Nor
## Appropriate for Defendant's Trial

This Court has scheduled jury selection to begin in this case on April 24, 2023.  By a
motion filed on March 17, 2023, the Government seeks an order from this Court to empanel an
anonymous jury.  This Court must deny the government's boilerplate motion unsupported by any
specific factual claims or assertions.

As set forth below, empanelling an anonymous jury in this case would unfairly burden the
presumption of innocence and should be rejected in favor of less extreme measures to protect the
privacy of the members of the jury.   An anonymous jury would poison the atmosphere of the
case and serve to bolster the Government's proof by creating the impression that the defendant on
trial is guilty and dangerous.  Particularly in a case where the Government has charged the
defendant with acts of violence, juror anonymity sends the message to each juror that he or she
needs to be protected from the defendants on trial.   From there, members of the jury could
rationally infer that the defendant is both dangerous and guilty.

Accordingly, granting the Government's application would deny the defendants the fair
trial guaranteed by the United States Constitution.

An anonymous jury may not be empaneled in the absence of "strong reason to believe the
jury needs protection," since empaneling an anonymous jury burdens the presumption of
innocence and impairs a defendant's ability to conduct meaningful voir dire.  The empaneling of
an anonymous jury is an unusual and drastic measure that is justified only when the Government
establishes that it is "genuinely called for." *United States v. Vario,* 943 F.2d 236, 239 (2d Cir.
1991); *United States v. Thai*, 29 F.3d 785, 80 I (2d Cir. 1994).

The Second Circuit has repeatedly and consistently held that this deviation from standard
methods of jury-selection is permissible only under circumstances where there is a convincing
showing by the Government of a "strong reason to believe the jury needs protection." *United
States v. Thomas,* 757 F.2d 1359, 1365 (2d Cir. 1985).  Without this predicate showing, an
anonymous jury may not be empaneled. In assessing whether a jury truly "needs protection," and
that, therefore, an anonymous jury is "genuinely called for," the court has emphasized that, "An
obstruction of justice charge, particularly one involving jury-tampering, has always been a crucial
factor in our decisions regarding anonymous juries." *Vario,* 943 F.2d at 240; *see also United
States v. Tutino,* 883 F.2d 1125, 1132-33 (2d Cir. 1989).

The reason a decision to impanel an anonymous jury may come only after a strong
showing of its necessity is that the practice places a burden on two important interests: the
presumption of innocence and the defendant's interest in conducting a meaningful voir dire. As
stated in *United States v. Amuso,* 21 F.3d 1251, 1264 (2d Cir. 1994), in considering a motion for
an anonymous jury, a court "must balance the defendant's interest in conducting a meaningful
voir dire and in maintaining the presumption of innocence against the jury's interest in remaining

Hon. Diane Gujarati
March 27, 2023

free from real or threatened violence and the public interest in having the jury render a fair and impartial verdict." Courts do not reach the balancing test, however, without a credible and convincing predicate showing from the Government that there is, in fact, "strong reason to believe the jury needs protection," defined as a finding that there is "a serious threat to jury safety." *Thomas,* 757 F.2d at 1364-65, Amuso, 21 F.3d at 1264 (quoting Thomas with approval)*; see also United States v. Wong,* 40 F.3d 1347, 1376 (2d Cir. 1994) ("Empanelling an anonymous jury undoubtedly has serious implications for a defendant's interest in effectively conducting voir dire and in maintaining the presumption of innocence.").

In *United States v. Ross,* 33 F.3d 1507 (11th Cir. 1994), the Court summarized the risks of an anonymous jury as follows:

> Unquestionably, the empanelment of an anonymous jury is a drastic measure, one which should be undertaken only in limited and carefully delineated circumstances. An anonymous jury raises the specter that the defendant is a dangerous person from whom the jurors must be protected, thereby implicating the defendant's constitutional right to a presumption of innocence.

*Ross,* 33 F.3d at 1519.  In *Thomas*, the Court considered the impact on a defendant's presumption of innocence of the practice of impaneling an anonymous jury:  The elementary principle that a shield of innocence surrounds a defendant on trial reached back in history at least to early Roman law. *See Coffin v. United States,* 156 U.S. 432, 453-54, 39 L.Ed. 481, 15 S.Ct. 394 (1895). Recognition of this principle and its enforcement are part of the foundation of our system of criminal justice. A particular practice - here the impaneling of an anonymous jury - and its impact on the presumption of innocence must therefore receive close judicial scrutiny and be evaluated in the light of reason, principle and common sense. *757 F.2d at 1363.*

Because of the importance of the interests that are burdened by the practice, an anonymous jury "is a measure that should be taken only with care." *United States v. Bellomo,* 954 F.Supp. 630, 654 (SDNY 1997)*; see United States v. Millan-Colon,* 834 F.Supp. 78 (SDNY 1993) (denying application for anonymous jury)*; United States v. Melendez,* 743 F.Supp. 134, 135 (EDNY 1990) (denying "drastic remedy of an anonymous jury")*; United States v. Coonan,* 664 F.Supp. 861 , 862 (SDNY 1987) (denying anonymous jury in the absence of evidence that the defendants - notwithstanding the fact they were charged with "predicate acts including murder, attempted murder, kidnapping, loansharking, extortion, and narcotics trafficking as part of a racketeering enterprise known as the Westies" - were likely to interfere with the judicial process).

Indeed, even in the appropriate case, empaneling an anonymous jury burdens the presumption of innocence. The cases that have upheld the practice only have done so based upon particular facts that justified the burden placed on the rights of the defendant. Those facts, however, are not present here.

Hon. Diane Gujarati
March 27, 2023

    **A.**    **The Criteria That Justify the Empanelment**
                **of an Anonymous Jury Is Not Present Here.**

     It is well settled that there are five factors relevant to determining the propriety of empanelling an anonymous jury: "(I) the seriousness of the charges; (2) the dangerousness of the defendant; (3) the defendant's ability to interfere with the jury, either by himself or through a criminal organization of which he is a member; (4) previous attempts to interfere with the judicial process by the defendant or his associates; and (5) the amount of public and media attention expected during the trial that might expose the jurors to extraordinary pressures that might impair their ability to be fair." *United States v. Thai,* 29 F.3d at 801.  However, none of these factors suggest that an anonymous jury is necessary or appropriate for this trial.

          **1.**      **The Seriousness of the Charges and Dangerousness of the Defendant**.

     There is no question that the charges in the instant matter are serious.  Notably, Mr. Acevedo is not charged with witness or jury tampering or obstruction of justice.

          **2.**      **The Defendant's Ability to Interfere with the Jury and Previous**
                  **Attempts to Interfere with the Judicial Process**

     The Government fails to alleged any acts by Mr. Acevedo which demonstrate a willingness and the ability to tamper with the judicial process in a most serious fashion.  Nor does the Government to contend that Mr. Acevedo has even speculated about the government's witnesses.

     Further, it is important to note that Mr. Acevedo, who has been in custody since his March 2021 arrest, will remain in custody during the pendency of this trial. Accordingly, he does not have the ability to interfere with the jury and, therefore,  no reasonable juror has cause to fear him personally.

          **3.**      **Media Attention Expected During the Trial**

     The has been no media coverage of this case and none is expected during the trial. Indeed, defendant respectfully submits that there is nothing to suggest that this trial will garner any media attention let alone the type of media attention that could cause extraordinary pressure upon the jury or impair their ability to be fair.  To the contrary, it is the specter of an anonymous jury itself that most threatens juror impartiality in this case, since jury anonymity in and of itself carries the potential to taint the jurors' opinions about the defendant.

     The interference with the presumption of innocence is a far more serious and realistic consequence than the highly speculative claim that jurors, contrary to their oaths and to the instructions of this Court, would be influenced by media attention.

Hon. Diane Gujarati
March 27, 2023

 Accordingly, for the reasons stated, the Government's motion for an anonymous jury should be denied.  In the event that the Court grants the Government's motion an extensive questionnaire is required.

 Thank you for your attention to this matter.

Respectfully submitted,

*Mark S. DeMarco*

Mark S. DeMarco
Elizabeth Macedonio
Cody Warner
Attorneys for Christopher Acevedo

cc: Kayla Bensing, Esq.
  James P. McDonald, Esq.
  Assistant United States Attorneys
  By ECF & Electronic Mail